**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CATHY BROOKS, as parent and legal guardian of J.R. BROOKS, a minor,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF EDUCATION OF ELGIN SCHOOL DISTRICT U-46 and JAMES T. HARTFORD, as administrator of the estate of Diane Marie Lawe, deceased,<br><br>Defendants. | No. 25 CV 8038<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

Cathy Brooks alleges that in September 2023, a substitute teacher called her sixth-grade daughter J.R. a racial epithet in front of her classmates. Brooks, as parent of J.R., brought claims against the teacher, Diane Lawe, for violations of state and federal law. She also sued the Board of Education of Elgin School District U-46 ("the Board") on theories of *respondeat superior* and indemnification for the actions of Lawe and an unnamed administrator. The Board now moves to dismiss all claims against it. [52]. For the reasons that follow, that motion is granted in part and denied in part.

## I. Legal Standards

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include

"sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (citation omitted). On a motion to dismiss for failure to state a claim, courts accept as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor, as this Court does below. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). That said, courts need not credit legal conclusions or "threadbare recitals" supported by "mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018).

## II. Facts

Brooks is a resident of Illinois and the mother of J.R., an African American minor. [45] ¶¶ 4, 12. At all relevant times, J.R. was a sixth-grade student at Ellis Middle School. *Id.* ¶ 10. J.R. had an individualized education program ("IEP"). *Id.* ¶ 11. On September 12, 2023, Lawe served as a substitute teacher for J.R.'s first period special education class. *Id.* ¶¶ 11, 13. That morning in class, in front of other students, Lawe called J.R. "an offensive racial epithet" and mocked her classmate L.R. for being "mentally ill." *Id.* ¶ 14. (The complaint does not specify the racial epithet Lawe used, and the precise epithet does not change the Court's analysis.)

Following this scene, a school administrator told J.R. "not to make a big scene about the incident." *Id.* ¶ 16. As a result, Brooks alleges that J.R. has suffered humiliation, emotional distress, loss of educational confidence, and a diminished ability to feel safe and comfortable at school. *Id.* ¶ 17.

In her second amended complaint, Brooks brings two federal civil rights claims against Lawe: under 42 U.S.C. §§ 1983 and 1981 (Counts I and II). Brooks also brings three state-law claims against Lawe and the Board: willful and wanton conduct (Count III), negligent infliction of emotional distress (Count IV), and intentional infliction of emotional distress ("IIED") (Count V). Her second amended complaint also seeks to recover from the Board under a theory of *respondeat superior* and on a claim for indemnification. [45] at 8–9. The Board has moved to dismiss all claims against it.

## III. Analysis

### A. Negligent infliction of emotional distress (Count IV)

Brooks does not contest dismissal of her claim for negligent infliction of emotional distress. [68] at 2, n.3. Count IV is thus dismissed without prejudice, as to both Lawe and the Board. *See Perez v. City of Chicago*, No. 13 CV 4531, 2016 WL 4493425, at *3 (N.D. Ill. Aug. 26, 2016) (dismissing claims without prejudice when plaintiff did not contest their dismissal).

### B. Willful and wanton conduct (Count III) and IIED (Count V)

In her opposition to the Board's motion to dismiss, Brooks concedes that the Board did not have advanced knowledge of the risk that Lawe or the unnamed administrator would act as they did. [68] at 2, n.3. But, Brooks argues, she has nonetheless pleaded viable claims against the Board because the Board is vicariously liable for the conduct of Lawe and the unnamed administrator. *Id.*; *see also id.* at 6–8. Such liability stems from the doctrine of *respondeat superior*, which establishes that an employer can be held liable for the torts of its employee. *Wright v. City of*

*Danville*, 675 N.E.2d 110, 118 (Ill. 1996).[1] Under Illinois law, "[a]n employer may be vicariously liable for the tort of an employee if the tort is committed within the scope of the employment." *Boston v. U.S. Steel Corp.*, 816 F.3d 455, 467 (7th Cir. 2016) (citing *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007)).

Brooks's complaint provides two employees' acts through which the Board is allegedly liable for willful and wanton conduct and IIED: Lawe's comments in the classroom, and the unnamed administrator's admonition to J.R. that she not make a big deal about the situation. Before the Court addresses whether these acts sufficiently state claims for willful and wanton conduct and IIED, it first addresses whether Brooks has plausibly alleged that the acts were committed within the scope of Lawe's and the school administrator's employment and therefore whether the Board can be liable for them.

**1. The Board's liability for employees' tortious acts**

Brooks argues that Lawe's comments calling her an offensive racial epithet and mocking a classmate for being "mentally ill" were within the scope of Lawe's employment as a substitute teacher. [68] at 7. Illinois uses the standard from the Second Restatement of Agency to determine whether an employee's acts are within the scope of employment. *Bagent*, 862 N.E.2d at 992. As relevant here, under that standard, courts consider three criteria: (1) whether the conduct is of the kind the employee is employed to perform; (2) whether the conduct occurs substantially within

[1] Brooks pleaded *respondeat superior* as a separate count. [45] ¶¶ 41–42. But *respondeat superior* is not an independent cause of action, *see Simon v. Nw. Univ.*, 175 F. Supp. 3d 973, 984 (N.D. Ill. 2016), so the Court addresses this theory of liability while addressing Brooks's claims of willful and wanton conduct and IIED.

the authorized time and space limits; and (3) whether the conduct is motivated, at least in part, by a purpose to serve the employer. *Id.* (citing Restatement (Second) of Agency § 228 (1958)).

Lawe made the alleged comments while employed as a substitute teacher, but it does not directly follow that the comments were within Lawe's scope of employment. As the Board points out, Illinois courts have held repeatedly that a teacher who sexually harasses or abuses a student acts squarely outside of her scope of employment. *See* [53] at 4–5, 12–13. For example, in *Doe ex rel. Doe v. Lawrence Hall Youth Services*, a teacher engaged in an inappropriate relationship with a student when she took him off campus, consumed drugs and alcohol with him, bought him gifts, and engaged in sexual acts. 966 N.E.2d 52, 55 ¶ 4 (Ill. App. 1st Dist. 2012). An Illinois appellate court concluded that the school could not be held liable for the teacher's actions because "sexual assault by its very nature precludes a conclusion that it occurred within the employee's scope of employment under the doctrine of *respondeat superior*." *Id.* at 62 ¶ 30 (emphasis removed). By analogy, the Board argues, the reasoning in *Doe* applies here. [53] at 12 ("Much like in the sexual harassment context, a teacher who allegedly 'intentionally and maliciously' directs a 'racial epithet' at students or mocks them as 'mentally ill' is not engaging in conduct of the kind she is employed to perform but rather acts for purely personal reasons.").

Brooks argues that Lawe's demeaning comments were meant to serve the school and not for her own interests. [68] at 7. She argues that Lawe made the comments as she was "addressing her students in the classroom environment, and

determining how to address her students in the classroom environment." *Id.* In reply, the Board argues that by formulating this argument, Brooks has impermissibly tried to amend her complaint through her opposition brief. [69] at 4. Although a plaintiff cannot amend a complaint in this fashion, *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012), the Court may consider "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss … so long as they are consistent [with] the allegations in the complaint," *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015). A statement that Lawe made the alleged comments when "determining how to address her students in the classroom environment," *see* [68] at 7, is consistent with non-conclusory factual allegations in the second amended complaint, *see* [45] ¶¶ 7, 11 (Lawe was a substitute teacher for J.R.'s first-period class and was charged with providing "a safe, educational environment for the students within her care"); *id.* ¶ 14 (Lawe made the alleged comments "during class and in front of the other students").

Further, Brooks correctly notes that extreme and outrageous conduct does not necessarily mean that an employee departed from the scope of her employment. [68] at 6 (citing *Sunseri v. Puccia*, 422 N.E.2d 925, 930 (Ill. App. 1st Dist. 1981)). The cases Brooks cites do not arise from the school context, but they help illustrate the standard. In *Sunseri*, an Illinois appellate court overturned a directed verdict that a bar owner could not be liable for the severe violence committed by a bartender against a customer in response to the customer's mild complaint about being required to show identification. 422 N.E.2d at 927–29. *Sunseri* explained that "[w]hether an employee has departed from the scope of employment by acting purely for his own interest,

rather than at least in part for the employer, is normally a question for the jury." *Id.* at 930. It reasoned that in the context of bartenders assaulting patrons, unnecessary and excessive force may be anticipated. *Id.*

Another case Brooks cites involved the question of whether an employer was liable for its worker's death as he drove from his job site to a job-related testing site. *Pyne v. Witmer*, 543 N.E.2d 1304 (Ill. 1989). The worker was killed while driving intoxicated a few hours after he completed the test. *Id.* at 1307. The court left the question to the jury of whether the intoxicated drive away from the testing site was within the worker's scope of employment. *Id.* at 1310–11.

*Sunseri* and *Pyne* show that employees' actions can plausibly be considered within the scope of employment even when the employer never would have condoned them. Lawe's use of a racial epithet and mocking a child by calling her "mentally ill" clearly constitute unacceptable conduct by an employee substitute-teaching a special education class (or any teacher, teaching any class), but at the motion to dismiss stage, the Court draws all reasonable inferences in the plaintiff's favor. *See Kubiak*, 810 F.3d at 481. Brooks's complaint offers sparse facts about the context surrounding Lawe's comments, but she does allege that Lawe's conduct took place in the classroom during school hours. Imagining the classroom scene, it is just as reasonable to infer that Lawe was making a severely misguided attempt to manage the classroom or adjust student behavior when she used the racial epithet as it is to infer that Lawe fired off the racial epithet with no regard towards her job duties. In other words, the allegations here allow room for deplorable behavior that is still within the scope of

Lawe's employment in a way that sexual misconduct by a teacher, "by its very nature," does not. *See Doe*, 966 N.E.2d at 62 ¶ 30 (emphasis removed).

Based on the facts Brooks has alleged, considering the Restatement factors and drawing all reasonable inferences in Brooks' favor, the second factor is clearly met and the first and third factors can be reasonably inferred. *See Bagent*, 862 N.E.2d at 992. Brooks therefore has plausibly alleged that Lawe's inappropriate comments were made within the scope of employment. Moreover, when there is ambiguity, the question of whether liability for Lawe's actions can be imputed to the Board typically is left to the jury. *See Sunseri*, 422 N.E.2d at 493.

Brooks also argues that the Board can be liable owing to the unnamed administrator telling J.R. "not to make a big scene about the incident." [45] ¶ 16; [68] at 7–8. This allegation succeeds in plausibly alleging that the school administrator acted within his or her scope of employment when instructing J.R. on how to handle Lawe's remarks. It is more than reasonable to infer that the administrator was attempting to respond to the incident and manage the behavior of a student, both of which fall within the job duties of a school administrator.

**2. Willful and wanton conduct**

In Illinois, willful and wanton misconduct is not an independent tort, but an aggravated form of negligence that creates a hybrid category of liability for behavior that falls between negligent and intentionally tortious. *Davis v. Village of Maywood*, 240 N.E.3d 59, 67 ¶ 16 (Ill. App. 1st Dist. 2023).

> A successful claim based on a theory of willful and wantonness is a claim in which the plaintiff pleads and proves the basic elements of a negligence claim—including that the defendant owed a duty to the

> plaintiff, the defendant breached the duty, and the breach was the proximate cause of the plaintiff's injury—and the plaintiff also alleges and establishes either a conscious disregard for the plaintiff's welfare or a deliberate intention to harm.

*Id.* (internal citations omitted). In other words, Lawe must have been "conscious of [her] conduct, and, though having no intent to injure, must [have been] conscious, from [her] knowledge of the surrounding circumstances and existing conditions, that [her] conduct [would] naturally and probably result in injury." *Vilardo v. Barrington Cmty. Sch. Dist. 220*, 941 N.E.2d 257, 267 (Ill. App. 2d Dist. 2010).

Brooks has plausibly alleged the basic negligence elements: that Lawe, as J.R.'s teacher, had a duty of reasonable care towards her; that Lawe breached that duty by calling her a racial epithet in front of her classmates; and that the breach proximately caused J.R.'s injuries. [45] ¶¶ 11, 14, 16–17, 28, 30. "School employees undoubtedly owe a duty of reasonable care to safeguard students under Illinois law." *Doe 2 v. DeKalb Cmty. Unit Dist. 428*, No. 23 CV 50292, 2024 WL 4766298, at *11 (N.D. Ill. Nov. 13, 2024) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 643 (1999)). Brooks's allegations on these points are brief, but that does not mean that they are conclusory; "in a straightforward case … a very brief statement is sufficient." *Dullen v. McBride*, 27 Fed. Appx. 607, 610 (7th Cir. 2001). The operative question, then, is whether Brooks's complaint, read in the light most favorable to her, plausibly alleges that Lawe knew from the context that her conduct would likely result in injury.

To determine whether an actor's conduct was willful and wanton, Illinois courts consider whether the actor had "knowledge of impending danger." *Barr v.*

*Cunningham*, 89 N.E.3d 315, 319 ¶ 20 (Ill. 2017); *see also Haase v. Kankakee Sch. Dist. 111*, 280 N.E.3d 185, 197 ¶ 43 (Ill. 2025). For example, *Haase* describes a case where a plaintiff successfully pleaded a claim of willful and wanton conduct when the defendant teacher left a student unsupervised on a school bus with another student who had a deviant sexual history and was the subject of a protective plan requiring he never be left unsupervised with other children. 280 N.E.3d at 197–98 ¶ 43 (citing *Doe ex rel. Ortega-Piron v. Chi. Bd. of Educ.*, 820 N.E.2d 418 (Ill. 2004)). As a counterexample, a plaintiff who sustained an injury as a result of his gym teacher neglecting to require protective eyewear during floor hockey failed to support a claim of willful and wanton misconduct because floor hockey played with plastic hockey sticks and squishy balls was not an obviously dangerous activity. *Barr*, 89 N.E.3d at 321 ¶ 23.

Brooks has plausibly alleged that Lawe's comment directed toward J.R. was willful and wanton. Brooks has alleged that J.R. was one of two African American children in a special education class when Lawe called her a racial epithet "intentionally and maliciously" in front of her peers. [45] ¶¶ 12, 14. It is reasonable to infer that Lawe, an adult employed as a substitute teacher, knew calling J.R. a racial epithet in that context would lead to J.R.'s humiliation, emotional distress, and discomfort in the school environment—all of which allegedly came to fruition. *Id.* ¶ 17. *See also Kahn v. Walmart Inc.*, 107 F.4th 585, 594 (7th Cir. 2024) ("[E]ven Rule

9(b) allows malice, intent, knowledge, and other conditions of a person's mind to be alleged 'generally.'").[2]

Applying the same standard, the unnamed administrator's remark did not plausibly pose a high risk of serious harm to J.R., as is necessary to constitute a claim of willful and wanton conduct. Even considering the factors lending J.R. additional vulnerability—i.e., she was a sixth-grader and required special education services—the administrator's comment could not have been anticipated to pose a high risk of serious harm despite its callousness. *See Barr*, 89 N.E.3d at 320 ¶ 21 ("To establish willful and wanton conduct in the absence of evidence of prior injuries, Illinois courts have required, at minimum, some evidence that the activity is generally associated with a risk of serious injuries."). While the administrator could have been more sensitive, a reasonable person would not expect a child to suffer serious harm as a result of being instructed "not to make a big scene."

Brooks's claim against the Board for willful and wanton conduct can proceed to the extent that it is derivative of Lawe's comment, but not the administrator's.

---

[2] The Board attaches exhibits from an investigation following the incident and argues that its "prompt remedial action" "forecloses" a claim of willful and wanton conduct. [69] at 5–6. To support its argument, the Board points to case law holding that "school employees who exercised some precautions to protect students from injury, even if those precautions were insufficient, were not guilty of willful and wanton conduct." *Id.* (quoting *Barr*, 89 N.E.3d at 319 ¶ 18). Even if the Court took judicial notice of the Board's exhibits, the Board's argument is unpersuasive. By definition, remedial actions are not precautions. *See also Carrizales v. Rheem Mfg. Co., Inc.*, 589 N.E.2d 569, 583 (Ill. App. 1st Dist. 1991) ("[E]vidence of remedial measures could not be used in determining whether defendant's conduct met the standards for willful and wanton.").

**3. IIED**

The legal definition of IIED sets an extremely high bar, requiring plaintiffs to allege conduct that is "truly extreme and outrageous." *Briggs v. N. Shore Sanitary Dist.*, 914 F. Supp. 245, 251 (N.D. Ill. 1996) (quoting *Harriston v. Chi. Trib. Co.,* 992 F.2d 697, 702 (7th Cir. 1993)). "The standard is high, and 'under no circumstances [do] mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct.'" *Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 697 (N.D. Ill. 2012) (quoting *Feltmeier v. Feltmeier,* 798 N.E.2d 75, 80 (2003)) (alteration in original).

Lawe's alleged comments do not meet the standard. In *Golden*, the plaintiffs brought a claim of IIED citing racist behavior from their coworker, including consistent racial epithets and sending a photo depicting "light beer cans wearing Ku Klux Klan-style white hoods surrounding a darker-colored beer bottle hanging from a rope." 884 F. Supp. 2d at 684. *Golden* collected cases where plaintiffs had alleged various degrees of inappropriate and racist conduct, including calling others racial epithets and harassing them, that did not rise to the level of stating an IIED claim. *Id.* at 697. The district court concluded that, while the alleged conduct was inappropriate and offensive, it did not meet the high standards for IIED. *Id.*

In a similar case, a plaintiff's allegations that she was excluded from office activities, called racial slurs by a coworker assigned to train her, and that another coworker who had been assigned to observe her hung a black "pickaninny" doll in the plaintiff's work area by a string tied around its neck did not state a claim for IIED. *Briggs*, 914 F. Supp. 245 at 247–48, 252. The court found that while "such conduct is

deplorable," it does not meet the "high standard for extreme and outrageous conduct" required for an IIED claim, even though it was perpetrated by more senior colleagues. *Id.* at 252. *See also Harriston v. Chi. Trib. Co.*, 992 F.2d 697, 702 (7th Cir. 1993) ("Liability for intentionally inflicting emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.") (cleaned up).

Brooks cites *Kolegas v. Heftel Broadcasting Corp.*, in which the Illinois Supreme Court considered whether a plaintiff had stated a claim for reckless infliction of emotional distress against a radio broadcaster who allegedly said to the plaintiff on air that his "wife was so hideous that no one would marry her except under duress" and that his "wife and five-year-old child had deformed heads." 607 N.E.2d 201, 212 (Ill. 1992). The insults alleged in that case were broadcasted by radio across the Chicago metropolitan area and outlying counties. *Id.* The broadcasters also cut off the conversation before the plaintiff could respond, leaving their insults as the last word. *Id.* The court noted that the radio jockeys who made the comments "had access to channels of communication; the power of the media cannot be denied." *Id.*

The factors that swayed the *Kolegas* court are not present in Brooks's complaint. Instead, this situation is more akin to *Golden* and *Briggs*, which found that allegations of despicable racial harassment did not state a claim of IIED. Nor does the administrator's admonition that J.R. "not make a big scene" come close to meeting the standard; it cannot reasonably be understood as the type of extreme, outrageous behavior that plaintiffs must allege to successfully plead a claim of IIED.

Because Brooks has not stated a claim of IIED based on Lawe's or the administrator's remarks, she has not stated a claim of IIED against the Board on the theory of *respondeat superior*.

**C. Indemnification**

Claims for indemnity against a public entity are derivative liability claims that depend on a plaintiff prevailing against an individual defendant. *Patch v. Glover*, 618 N.E.2d 583, 588 (Ill. App. 1st Dist. 1993). Illinois law requires public entities such as the Board to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 745 ILCS 10/9-102. Because Brooks has stated a claim against Lawe for willful and wanton conduct and her claims against Lawe for violation of federal law are not dismissed at this stage, Brooks's claim against the Board to indemnify Lawe is also not dismissed.

The school administrator was plausibly acting within the scope of employment, but because Brooks has not plausibly alleged that the school administrator committed any tort against her, and because the administrator is not named as a defendant to this action, the Board is not liable to indemnify him or her. *See id.* (directing a public entity to pay a tort judgment or settlement for compensatory damages for which an employee is liable).

**D. Illinois Tort Immunity Act**

The Board invokes two sections of the Illinois Tort Immunity Act to support the argument that it is immune from suit based on the facts Brooks has alleged. [53] at 13–15. First, the Board cites § 3-108, which immunizes public entities like school boards from liability for injuries caused by their failure to supervise, absent the

supervisor's willful or wanton misconduct. 745 ILCS 10/3-108; *Doe v. Bd. of Educ. of City of Chi.*, 611 F. Supp. 3d 516, 543 (N.D. Ill. 2020). But as noted above, Brooks's claims are not based on the Board's alleged failure to supervise its employees, but based on a theory of vicarious liability for the actions of its employees. *See supra* at 3; *see also* [68] at 9 ("Plaintiff does not allege negligent supervision[.]"). Section 3-108 is not relevant.

Section 2-201 of the Tort Immunity Act provides immunity to public employees, such as Lawe, under certain circumstances. It provides that "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Statutory immunity is an affirmative defense. *Roe v. Bd. of Educ. of Cmty. High Sch. Dist. 99*, 2024 IL App (3d) 220377-U at *5 ¶ 28. At the motion-to-dismiss stage, a claim may only be dismissed based on an affirmative defense if the complaint pleads facts that "conclusively establish" that the defense is dispositive. *Reilly v. Will Cnty. Sheriff's Off.*, 142 F.4th 924, 930 (7th Cir. 2025).

The Illinois Supreme Court has adopted a two-part test to determine whether a public employee is entitled to immunity under § 2-201. *Mulvey v. Carl Sandburg High Sch.*, 66 N.E.3d 507, 517 ¶ 45 (Ill. App. 1st Dist. 2016). "First, an employee may qualify for immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion." *Id.* (cleaned up). If the employee holds such a position, he is immune from suit only for decisions that manifest both

the determination of policy *and* the exercise of discretion. *Id.* In the tort immunity context, policy decisions require the decision maker "to balance competing interests and to make a judgment call as to what solution will best serve each of those interests." *Id.* at 518 ¶ 51.

The Board contends that teachers and school administrators are often protected by § 2-201 immunity due to the discretion inherent in their roles and their interpretations of school policy. [69] at 9 ("Illinois courts have routinely applied §2-201 immunity to teachers and administrators for decisions that require them to balance competing interest[s] and make judgment calls."). But Brooks's complaint does not conclusively establish that Lawe's and the unnamed administrator's conduct were policy decisions. The complaint does not present facts conclusively showing that Lawe and the unnamed administrator balanced competing interests rather than spoke hastily without considering various factors. Whether a given action was a policy decision is a fact-intensive analysis; for that reason, it is often inappropriate for a court to grant § 2-201 immunity when ruling on a motion to dismiss. *See Roe*, 2024 IL App (3d) 220377-U at *5 ¶ 28.

The cases the Board cites in support are distinguishable. Two were decided at the summary-judgment stage, where the deciding court had a greater opportunity to analyze a developed record and determine whether the challenged act involved both the determination of policy and the exercise of discretion. *See Harrison v. Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848 (Ill. 2001); *Courson ex rel. Courson v. Danville Sch. Dist. No. 118*, 775 N.E.2d 1022 (Ill. App. 4th Dist. 2002).

The other two cases involved teachers' implementations of anti-bullying policies. *Hascall v. Williams*, 996 N.E.2d 1168 (Ill. App. 4th Dist. 2013); *Mulvey*, 66 N.E.3d at 517. *Mulvey* is illustrative. Through their parents, two students sued their school district, as well as various administrators, guidance counselors, and coaches, for failing to discipline their bullies. *Id.* at 517 ¶ 46. The court found that the school's anti-bullying policy required discretion in its implementation; it required educators to use policy judgment and balance competing interests to decide whether a student should be disciplined under the policy and what the consequences should be. *Id.* at 517–18 ¶¶ 47–79. On the contrary, Brooks has not pleaded any facts indicating that Lawe or the unnamed administrator were interpreting school policy or balancing competing interests when they made their challenged remarks.

At this early stage of the proceeding, therefore, immunity is not grounds for dismissal. However, the Tort Immunity Act protects the Board from direct and indirect liability for punitive damages. 745 ILCS 10/2-102.

### E. Supplemental Jurisdiction

The Board asks the Court to relinquish supplemental jurisdiction over Brooks's state law claims. [53] at 15. Federal district courts have supplemental jurisdiction over all claims that are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court may choose to relinquish supplemental jurisdiction over state law claims that raise new or complex issues of state law or that predominate over the federal issues in the case. *Id.* § 1367(c)(1)–(2).

The Court has supplemental jurisdiction over the state law claims discussed here because Brooks has also pleaded two federal claims against Lawe. [45] ¶¶ 18–26. The Board asserts, without analysis, that Brooks's state law claims raise novel or complex issues of state law and substantially predominate over Brooks's federal law claims against Lawe. [53] at 15; [69] at 10. The Court disagrees that either of these bases apply. The state law claims require only an application of existing state law, which the Court has performed. They are also directly related to the federal claims against Lawe. The Court thus declines to relinquish supplemental jurisdiction over Brooks's state law claims.

## IV. Conclusion

For the reasons stated, the Board's motion to dismiss Brooks's second amended complaint is granted in part and denied in part. [52].

Counts III, VI, and VII may proceed, within the limits set forth in this opinion. Count IV is dismissed without prejudice in light of Brooks's concession. Count V is dismissed without prejudice. With respect to Count III (as it pertains to the administrator) and Count V Brooks may file an amended complaint if she can cure the deficiencies the Court has identified while still complying with her obligations under Federal Rule of Civil Procedure 11. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

Any amended complaint is due on or before December 15, 2026. If Brooks does not submit an amended complaint by December 15, 2026, the dismissal of Count III (as it pertains to the administrator) and Count V will automatically convert into dismissals with prejudice.

ENTER:

Georgia N. Alexakis
United States District Judge

Date: 11/24/2026